19-1180 from the District of Minnesota, Nancy Axline v. 3M Company et al. Ms. Zimmerman, you may proceed. Thank you, Your Honor, and may it please the Court. Ms. Axline is here on appeal and submits that it is an abuse of discretion for the Ohio Products Liability Statute and that it is an abuse of discretion unless there is evidence of undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice or futility. None are present here, so denial of the motion to amend was in fact an abuse of discretion under this Court's decision in Kozlov v. Associated Wholesale Grocers in 2016. Federal Rule of Civil Procedure 15 governs the amendment in this case, and that's true until and unless there's a scheduling order that sets a deadline for the amendment. As this Court's certainly aware, Federal Rule of Civil Procedure 15 requires that a court should freely give leave when justice so requires. And in fact, Rule 15 goes on to say that amendments during or even after trial should be permitted when doing so will aid in presenting the merits of this case. And that's what should have happened in this case. Ms. Axline was slated to go to trial in December of 2018. She brought her complaint in the early part of 2017. It was answered in July of 2018, the same day, or pardon me, about three days before discovery closed in this case. 3M then brought a motion for judgment as a matter of law, and approximately 10 days after the District Court ruled that Ohio substantive law would apply to Ms. Axline's case, Ms. Axline brought a motion for leave to amend her complaint, really just a formality. It wasn't a change in the It was merely because Ohio law requires a plaintiff proceeding with certain types of claims to specifically cite and claim the statute at issue under the Ohio Products Liability Act. Excuse me, Ms. Zimmerman, weren't you on notice in July of 2018 when the District Court issued its lexicon order that it would intend to apply Ohio law, and therefore don't we have undue delay? No, Your Honor. While the District Court did issue a ruling with respect to the lexicon waivers in July of 2018, it wasn't until September when briefing was completed and the District Court issued an order finding that Ohio substantive law would in fact apply to Ms. Axline's case, that Ms. Axline was on real notice that Ohio products liability law or Ohio substantive law would have governed her case. But what's important for the court to consider today is that the evidence shows that there's no prejudice to the parties here. The discovery had already closed, Ms. Axline had disclosed her experts, there were no extensions requested, there were no delays sought, the case could have gone forward to trial in December of 2018 as scheduled. And in fact, the court found that there was no undue prejudice. 3M admitted as much with respect to at least the design defect claims. Given that, and given the policy in favoring that cases be decided on their merits, not on a procedural technicality, it was important that Rule 15 be followed here and leave freely granted such that Ms. Axline could have essentially conformed her complaint to the at the time that the lexicon order came down in July of 2018, Ms. Axline didn't even have an answer from 3M. That was not served until July 23rd of 2018, nearly a year and a half after she filed her complaint. Your client's attempt to withdraw the lexicon waiver was on the basis of a decision made in the Garris case that it would be the place of the law would be the place of residence of the plaintiff, right? So isn't that a substantial notice that Ohio law was going to apply here? Your Honor, Ms. Axline would concede she certainly would be unnoticed that it may apply. Because of the procedural tool in pretrial order number five, the direct filing order, she had indicated that that's where she would have filed her case but for the direct adopt a test that looks at the state with the most significant relationship to the parties and the incident, Ms. Axline certainly believed that she had a good faith basis that a claim brought against Minnesota Mining and Manufacturing for a product that was invented, conceived of, marketed, manufactured all from Minnesota, that Minnesota would have the most substantial relationship to the claims at issue. And at a minimum, the district court in deciding Garris and then even in deciding Ms. Axline's case reminded both plaintiffs broadly and defendant that the decisions that were made in Garris and Axline were specific to Garris and Axline and were not intended to be MDL-wide decisions that Ohio law would always apply any time an injury happened in Ohio. So Ms. Axline went through the process of arguing that in fact Minnesota substantive law should apply. The district court ultimately determined it should be Ohio law and within 10 days of that decision, Ms. Axline brought her motion for leave to amend her complaint to conform to the Ohio Products Liability Act. It was merely a procedural motion and given this court's precedent and the federal rules of civil procedure, including rule one, that the rules should be considered and construed and administered to secure the dust, speedy, and inexpensive determination of every action proceeding and the favor that these cases should be decided on the merits. Ms. Axline's amendment should have been granted. Ms. Hillerman, I'd like to follow up on that if I could. Did the district court ever undertake a most significant relationship analysis? No, your honor, and the parties agree about that. The district court makes an error of fact in deciding that in fact, and this is at addendum 06, the court's order says neither the plaintiff nor the defendants addressed the more significant relationship test and the order then goes to say the court is unaware of any basis for regarding Minnesota as the state with the more significant relationship to the occurrence in the parties. That's the reason for my question. Is that an error of law for the court not to have undertaken that analysis? Yes, your honor, it is an error of law and 3M agrees that that was an error at their response brief page 10 at note three. Plaintiffs did in fact address the most significant relationship test in opposing the JMOL and that appears at app 068 where we talk about what the Ohio Supreme Court adopted with respect to more requires that this be remanded for further proceedings on that particular question, and I will reserve the remainder of my time if I may at this point. Very well, thank you, Ms. Zimmerman. Mr. Van Aert, we'll hear from you again. You may please the court, your honors. This is another individual case that made it to judgment before the ruling on the experts and that will be mooted if the causation experts are excluded because it's the same evidence, but on the merits of this case, the real problem that Ms. Axline had is that she was an Ohio resident who was injured in Ohio, but she didn't assert the only product liability claims that Ohio allows until after the court had dismissed her complaint. She gives two escape this self-made dilemma, but neither of them is legitimate. Number one argument is that Minnesota law applies and not Ohio law. The real problem with this, we cited 28 cases in our brief. We may have been a little excited, your honors, this is the first appeal. We cited 28 cases in showing how Ohio law is going to apply. Ohio choice of law rules will apply Ohio law when it's both an Ohio resident and the injury occurred in Ohio on this and in reply, Ms. Axline doesn't distinguish any of those on there. The suggestion, your honor, that there was an error by the district court in not conducting a longer, most significant relationship analysis, that's incorrect. Counsel, I don't know that they conducted any analysis, let alone a short one. You argue in your brief that Ohio has the most significant relationship with Axline's claims, but I don't think the district court ever made that determination. No, the reason the district court's analysis was so abbreviated, your honors, that Ms. Line didn't argue Ohio's choice of law rules. It's true that she cited the case there, but the entire pages of her brief only applied Minnesota rules. When the district court was saying it wasn't aware of any reason why Minnesota would be the most significant relationship, it's because Ms. Axline never argued on that. The district court correctly cited the controlling case from the Ohio Supreme Court. It's the Morgan versus manufacturing case. What that case holds is that the place of injury presumptively is where the law is going to apply. Absent any showing that that presumption had been rebutted because Ms. Axline never argued it, the district court was entirely right to give a short analysis on that. A longer analysis, as we showed in our brief, gets to the same place on this. This is your honors, this is something that you can look at, too. It's not something that has to be done in the first instance by the district court on this, but it was correct and Ms. Axline didn't oppose it on that. The main argument from Minnesota, by the way, is that that's where the bear hugger was manufactured, but the Supreme Court case from Ohio that adopted the second restatement test was different from the state where the injury occurred, and the Ohio Supreme Court didn't do that. In fact, the device that is a meat grinder had been manufactured in Ohio, and the Ohio court still didn't apply Ohio law. It applied Kentucky law because that's where the injury happened and that's where the plaintiff was from. The very case that starts this doctrine in Ohio establishes that. This court in Dorman, applying the same second restatement test, said the same thing, that the location of the manufacturer isn't enough to rebut the presumption that it's the place of injury. Ms. Axline can't escape her failure to plead here by actually showing that Minnesota law applies because Ohio law does apply. The other argument she gives is that she should have been allowed to amend her complaint after it was dismissed to state Ohio law, and her basic argument on this is that she didn't delay in seeking an amendment after the complaint was dismissed, but that's the wrong starting point. The starting point is when she was reasonably on notice, and on that, that she should have cited the right Ohio law, and that was in February 2017 when she filed her complaint, because she alleged claims under Ohio law. It's not as if she was mystified that Ohio law was going to apply and didn't know it. She alleged claims under Ohio law, just the wrong ones, the ones that were preempted, and at that time, controlling Ohio authority and Sixth Circuit authority said she couldn't allege those common law claims because they were statutorily preempted. She was on notice in February 2017, and then your court has also gone through some of the other events that gave her notice. In June of 2018, the court in Garris did a choice of law analysis that said the place of injury is going to control. Plaintiff's counsel knew that and knew it was important because they immediately tried to withdraw their lexicon waiver to change the choice of law rules. They did that the same day in June on that, and the court rejected that in July, so they had notice because they were the change. And then, of course, in July, 3M also sent counsel for Ms. Axeline a letter saying to them, hey, the Ohio claims that you're asserting are preempted by statute. If you agree to change now, we'll stipulate to the change to do it. Counsel for Ms. Axeline refused in July there and instead went to briefing. We then moved to dismiss, moved for judgment on the move to amend. They only did it afterwards. All of this is to say that this case fits directly within this court's line of authority, saying that even when you're under Rule 15, if you wait until after you've lost, that's undue delay. You don't need to show prejudice. You don't need to show anything because litigants aren't entitled to litigate theories one at a time, go and lose on and start over again. It's a discourse decision in Ash versus Anderson where this court noted, you know, even apart from all the other former notice that Ms. Axeline had here, the motion to dismiss itself is notice on that, and she didn't move to formally amend at that point. I should note, Your Honor, you know, the cases I've been citing in this standard applies even if Rule 15 is the standard. In fact, here it's Rule 16 where it's due diligence. Your Honors don't have to resolve whether it's Rule 15 or 16 to affirm here. The one reason you might consider addressing Rule 16 is just to establish in this circuit that scheduling orders in an MDL actually do control and need to be followed because what happened here is the court, and plaintiffs admit this, the court set an MDL scheduling order that said the deadline to amend as of right. It set that in 2016. Plaintiff is right that she didn't even file her complaint until after that. That doesn't mean though that she was barred from amending. It just means that she had to go and get leave of the court, and the court in another case that we cite, an individual one, the Trombley, shows what happens when the plaintiff actually did it right. It was this very same situation. That plaintiff ahead of time, before the claim was dismissed, asked leave of the court to substitute the statutory claims and the court granted it. But the reason I say the court may be interested in clarifying this is because, especially in an MDL proceeding, there can be thousands of cases. The parties have to comply with the scheduling orders for the case to be run. It can't just keep going later and after the fact, ignoring it and saying there's no consequences, to really reinforce the court's ability to manage the MDL. What does the scheduling, the master scheduling order, does it, it gives a deadline. Does it give any instruction on what to do for later filed, direct filed cases? No, your honor. It doesn't specifically address that, your honor, and you know, in the later direct filed cases, they have the ability to shape their claims when they first file their complaint. And if something were to actually change, they could seek leave of the court and the court recognized that in this situation, because of the necessity of scheduling where you can have cases coming in over a long time, that the court recognized it would apply the rule 16 good cause standard with that in mind. That's why it allowed this amendment in this Trombley case. In short, your honors, this case is, oh, I should make one last point on this. This court's cases say that a finding of undue delay is a factual finding that's reviewed only for clear error. So that's the standard of review on the delay. And in light of the timeline I went through, which the district court acknowledged, there can't be any finding of clear error here. So just in sum, your honors, the court should affirm. Very well. Thank you, Mr. Van Orde. Ms. Zimmerman, your rebuttal. Thank you, your honor. Starting where counsel left off, the undue delay that was found was a clear error. The scheduling order that counsel and that the court applied to Ms. Axline that was entered in 2016 specifies and limits the applicability to amendments to the master long form and the master short form complaints. That's very different than Ms. Axline having a specific requirement that she bring an amendment to her own individual pleading. At no point did Ms. Axline have an obligation to bring a motion to amend the master long form or short form complaints. And from there I'd like to take the court a step back a minute that MDL orders are perhaps a little bit different. Here we have a procedural tool that facilitates review by the district court and also facilitates from an efficiency standpoint things from the plaintiff's perspective and the defense perspective. The court adopts a long form complaint that outlines the basic facts that are being alleged and the basic claims. And that same MDL order set a deadline for a rule 12 motion. If 3M were to bring a rule 12 motion with respect to the master long form complaint it was governed by that master scheduling order and they needed to bring that motion by July of 2016. There was no rule 12 motion brought and in fact Ms. Axline and other plaintiffs like her were reasonable then in relying upon the district court's adoption of both the master long form and the short form complaint and the fact that 3M had not at any point brought a rule 12 motion with respect to master long form complaint. Ms. Axline files her complaint at the beginning of 2017. And by the way one of the things that's an efficiency as you can imagine from a district court perspective there were over 5,000 cases pending here. And if there were not a master long form and short form complaint the district court and counsel for 3M would likely be facing whether rule 12 motions or JMOL motions with respect to 5,000 different people that had allegations with at least 50 different states laws applied. So these are really procedural kind of housekeeping tools that the district court uses in an MDL but that does not obviate rule 15 or rule 16. As the court certainly is aware rule 16 mandates it's a shall any rule 16 standard and scheduling order shall include the deadline by which any amendments to the complaints need to be made. That never happened with respect to Ms. Axline. And then counsel points to the Trombley case as evidence of what should happen or what could happen if the rules were followed correctly. Ms. Trombley and Ms. Axline were subject to the exact same scheduling orders. They had the master scheduling master long form scheduling order that was in place in 2016. Ms. Trombley by the way had her case filed prior to Ms. Axline and they both proceeded. They were from Ohio. They then both had two other scheduling orders that applied to their individual cases along with I think six other bellwether cases. The first scheduling order was April of 2018 and the second one was July 11th of 2018. At no point was there a schedule a deadline by which these plaintiffs were required to submit or bring motions to the court with respect to amending of their pleadings. Ms. Trombley's case is exactly the same as Ms. Axline's. The only difference is she actually waited longer. She waited longer to bring her motion to amend and yet it was granted. And the district court recognizes the potential problem there at footnote three or footnote one on page three of addendum at 026 because one of the things we discussed in that hearing was the fact that there was going to be a logistical nightmare for the district court and for the parties involved if we were to take the Garris order and the Axline order to set deadlines for every single one of the MDL plaintiffs to bring motions to amend. And so what the court says there at that footnote says as discussed at the motion hearing, this fact may create a serious problem going forward for cases selected for the bellwether pool. The parties would do well to find a mutually agreeable solution to this issue. This was really an issue of paperwork and one that confronts MDL courts in a slightly different way than it would a district court considering just a single case. This considered 5,000 different cases. But when applying rule 15 and rule one to the facts at issue here, Ms. Axline's motion for leave to amend should have been freely granted. The district court properly found that there was no bad faith, there was no unfair prejudice, that any failure to comply with local rules was certainly not subject to the court's either analysis or decision making here. And to the extent that the court found undue delay, that was a factual mistake by applying the 2016 scheduling order, which governs expressly by the terms of the scheduling order only the master long-form and the master short-form complaints. So counsel, is that your argument for why it was clear error to find undue delay because the she brought her motion for leave to amend within 10 days of the substantive order on Ohio law coming down. Things moved very quickly between the end of July, on July 23rd, when Ms. Axline's complaint was first answered, when the JML was brought just a few days later, and when the court heard argument and made a decision on the merits on September 10th. This whole thing takes place over the course of about six weeks. But again, reminding the court as the point, there was no additional information that 3M would have required by way of discovery. And they stipulate to that at their response at page 28, there was no unfair prejudice to 3M to allow amendments, at least on the design defect and failure to warrant claims. And given those concessions and given rule one and rule 15, Ms. Axline should have been permitted leave to amend her complaint and proceeded with trial in the late part of 2018. And for that reason, we would request that this court remand with instructions that the the amendment be granted. And additionally, that Ohio's most significant relationship test be applied to the facts of this particular case. Thank you, your honors. Thank you, Ms. Zimmerman and Mr. Van Oort again for your arguments before us. The case will be submitted and decided in due course.